**Michael X. HURLEY, Plaintiff,**

v.

**Benjamin J. WARD, Commissioner of the Department of Correctional Services, and Joseph Keenan, Director of Special Housing Units (Punitive Segregation), Individually and in their official capacities, Defendants.**

**No. 77 Civ. 3847.**

United States District Court,
S. D. New York.

June 9, 1978.

Prisoners' Legal Services of New York, Inc., Albany, N. Y., for plaintiff; Lanny E. Walter, Claudia Angelos, and Daniel J. Steinbock, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendants; Paul E. Dahlman, Deputy Asst. Atty. Gen., New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

The defendants move for partial summary judgment on the issue of their liability for damages to plaintiff on the grounds that they are protected by a qualified immunity from damage claims brought under 42 U.S.C. § 1983. The motion relates only to plaintiff's damage claims with regard to searches of plaintiff's anal and genital areas, which practice has been enjoined *pendente lite* absent probable cause. *Hurley v. Ward*, 448 F.Supp. 1227 (S.D.N.Y.1978). Because are material issues of fact which are in dispute, the motion must be denied.

As state prison officials, the defendants enjoy a limited immunity from liability for money damages under § 1983. *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978).

> "This . . . immunity would be unavailable, however, if the official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the rights of the [prisoner] affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the [prisoner].'"

*Id.* at 562, 98 S.Ct. at 860, *quoting Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The issue raised by this motion is whether either of these tests could be satisfied at trial, thus enabling plaintiff to pierce the defendants' immunity.

> "Under the first part of the *Wood v. Strickland* rule, the immunity defense would be unavailing to [defendants] if the constitutional right allegedly infringed by them was clearly established at the time of their challenged conduct, if they knew or should have known of that right

and if they knew or should have known that their conduct violated the constitutional norm."

*Procunier v. Navarette, supra,* 434 U.S. 562, 98 S.Ct. at 860. At the time that the searches of plaintiff occurred, and even as of the present date, the state of the law with regard to the constitutionality of these searches was anything but clear. There are now three decisions, including this court's earlier opinion in this case, which have found anal and genital searches to be constitutionally infirm. *Hurley v. Ward, supra; United States ex rel. Wolfish v. Levi,* 439 F.Supp. 114, 146–48 (S.D.N.Y.1977) (Frankel, J.), *aff'd in relevant part,* 573 F.2d 118, 130–131 (2d Cir. 1978); *Frazier v. Ward,* 426 F.Supp. 1354, 1360–67 (N.D.N.Y. 1977). However, as was noted in both *Hurley v. Ward* and *United States ex rel. Wolfish v. Levi,* there are other, and more numerous cases "which have found no constitutional violation in these practices." *Hurley v. Ward, supra,* 448 F.Supp. at 1230. While some of these cases may be distinguishable, Judge Frankel accurately noted that "[t]he decided cases cover a range that does not amount yet to a settled or definitive jurisprudence." *United States ex rel. Wolfish v. Levi, supra,* 439 F.Supp. at 148 n. 35. Thus, it simply cannot be said that at the time the events in question occurred plaintiff's constitutional right to be free from these searches was "clearly established," *Procunier v. Navarette, supra,* 434 U.S. 562, 98 S.Ct. at 860, or "basic [and] unquestioned," *Wood v. Strickland, supra,* 420 U.S. at 322, 95 S.Ct. at 1001, or that the defendants acted in "ignorance or disregard of settled, indisputable law." *Id.* at 321, 95 S.Ct. at 1000. Consequently, as was the case in *Procunier,* defendants are entitled to judgment as a matter of law with regard to the first branch of the *Wood v. Strickland* test.

However, summary judgment cannot issue on the second branch of the *Wood* standard—whether the defendants acted with "malicious" intent to cause the plaintiff injury, however that term is defined. In contrast to the objective nature of the inquiry under the first part of the *Wood* test,

the issue here is subjective—the actual state of mind of the defendants. *See Wood v. Strickland, supra,* 420 U.S. at 321–22, 95 S.Ct. at 1000–01. On the present state of the record, certainly, that issue is one which must be determined by a finder of fact.

In *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the Court reversed an order of dismissal, based on the good faith defense, of complaints against the governor of Ohio and other high state officials growing out of the Kent State incident. The Court stated:

"In dismissing the complaints, the [lower courts] erroneously accepted as a fact the good faith of the Governor, and took judicial notice that 'mob rule existed at Kent State University.' There was no opportunity afforded petitioners to contest the facts assumed in that conclusion. There was no evidence before the courts from which such a finding of good faith could be properly made and, in the circumstances of these cases, such a dispositive conclusion could not be judicially noticed."

*Id.* at 249–50, 94 S.Ct. at 1693. The only "facts" that defendants point to on the issue of defendants' intentions with regard to the anal and genital search policy are the unsettled state of the law in this area and certain regulations and directives of the Department of Correctional Services which defendants claim indicate that the challenged policy arises solely from concerns about prison security. While both of these facts might be relevant on the question of defendants' subjective good faith, they are by no means dispositive of the issue. Whether or not plaintiff will ultimately be successful on this point, he is entitled, as were the petitioners in *Scheuer v. Rhodes, supra,* to an opportunity to contest the claim of subjective good faith.

In addition to the absence of dispositive evidence in defendants' favor, there is also evidence available to plaintiff from which he could argue that defendants have not been acting in good faith. For example, despite the rulings in February, 1977, in *Frazier v. Ward, supra,* in which Commissioner Ward was also a defendant, and in

September, 1977, in *United States ex rel. Wolfish v. Levi, supra,* the defendants have apparently made no changes in their anal and genital search procedures. Indeed, by decision dated May 4, 1978, the Central Office Review Committee of the Inmate Grievance Program of the Department of Correctional Services refused to change the Department's strip search policy in the light of *Wolfish* on the grounds that the decision was a mandate only with regard to federal correctional facilities. While it is true that neither decision technically required the defendants to make any state wide changes in their procedures, their insensitivity to the emerging constitutional norm in the federal courts of this state could cast doubt on their assertion of good faith motivation. Their apparent failure to respond constructively to the *Frazier* decision is particularly noteworthy in light of the fact that the opinion specifically noted that physical force is sometimes necessary to administer these searches, 426 F.Supp. at 1363, that the searches are often accompanied by degrading comments by guards and are made as embarrassing as possible, *ibid.*, and that there are apparently "no cautions, instructions or guidelines . . . of any kind . . . to control vocal expressions or remarks of the observers." *Id.* at 1364. Thus, defendants have known of these unfortunate circumstances since at least February, 1977, yet the practice continues, apparently unchanged.

Furthermore, despite opportunities in two cases to establish the security need for these searches, the defendants have not done so. There is no indication in the *Frazier* opinion that defendants there offered any proof that the searches can be justified on security grounds; indeed a correctional officer there testified that no contraband had ever been discovered in a rectal search in the circumstances at issue in that case. There was a similar lack of persuasive proof at the hearing on the preliminary injunction in this case. Thus, again, it can be argued that since February, 1977, defendants have known that no proof exists for the supposed security need for the policy at issue.

I do not intend to suggest by this discussion that the defendants have, in fact, acted in bad faith. However, the existence of these circumstances does indicate that a determination of the subjective good faith issue in advance of trial is even more inappropriate here than it was in *Scheuer v. Rhodes, supra.*

*Procunier v. Navarette, supra,* is distinguishable in this regard. The Supreme Court there upheld the granting of summary judgment on this issue on a claim that prison officials interferred with prisoner mail. However, the particular claim for relief before the Court explicitly sounded in negligence, and the Court based its ruling on the argument that, by definition, a negligent act cannot be committed with malicious "intent." In the instant case, it is not apparent from the face of plaintiff's *pro se* complaint or from any of the proceedings had so far in this case that his claims against the defendants with regard to these searches are based on a theory of negligence, and the reasoning of *Procunier* is consequently inapposite.

Defendants' motion for partial summary judgment is denied.

IT IS SO ORDERED.